## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC., BOEHRINGER
INGELHEIM INTERNATIONAL GMBH, and
BOEHRINGER INGELHEIM PHARMA
GMBH & CO. KG,

                *Plaintiffs*,

     v.

LUPIN ATLANTIS HOLDINGS SA and
LUPIN LIMITED,

               *Defendants*.

C.A. No. 18-12663 (BRM)(TJB)
(consolidated)

*Document Filed Electronically*

## <u>DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

Arnold B. Calmann (abc@saiber.com)
Jeffrey Soos (js@saiber.com)
Katherine A. Escanlar (kae@saiber.com)
**SAIBER LLC**
One Gateway Center
10th Floor, Suite 1000
Newark, New Jersey 07102
(973) 622-3333

William A. Rakoczy
(wrakoczy@rmmslegal.com)
Paul J. Molino (pmolino@rmmslegal.com)
Deanne M. Mazzochi
(dmazzochi@rmmslegal.com)
Tara M. Raghavan
(traghavan@rmmslegal.com)
Matthew V. Anderson
(manderson@rmmslegal.com)
Katie A. Boda (kboda@rmmslegal.com)
**RAKOCZY MOLINO MAZZOCHI SIWIK LLP**
6 West Hubbard Street, Suite 500
Chicago, Illinois 60654

*Attorneys for Defendants*
*Lupin Atlantis Holdings SA and Lupin Limited*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ III

TABLE OF ABBREVIATIONS ......................................................................................... VI

I.   INTRODUCTION. ............................................................................................... 1

II.  THE PARTIES' PROPOSED CONSTRUCTIONS. ........................................... 3

III. A PERSON OF ORDINARY SKILL IN THE ART. ........................................... 3

IV.  PLAINTIFFS' PROPOSED CONSTRUCTIONS SHOULD BE REJECTED,
     AND LUPIN'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED. ................ 4

     A.   The preamble phrase, "[a]n inhaler for inhaling powdered pharmaceutical
          compositions from capsules," is not needed to give an antecedent basis to
          the body of the claims; and is not a fundamental characteristic of the
          purported claim improvements. .................................................................... 4

          1.   The preamble is not needed to provide an antecedent basis to "the
               capsules" when the phrase "capsule holder" precedes all uses of
               "the capsules" in the body of the independent claims. ............................. 4

          2.   The preamble does not disclose a fundamental characteristic of the
               claimed invention. ......................................................................................... 8

               a)   The preamble needs to involve a structure that is itself
                    patentable, and not found in the prior art, to make a
                    preamble structure a limiting one. .................................................. 8

               b)   Plaintiffs identify no alleged structural improvement that is
                    not already found in the body of the claims; the preamble
                    contains prior art elements. ............................................................. 9

               c)   Plaintiffs' cited cases are distinguishable for the same
                    reasons the Federal Circuit identified in *Arctic*. ........................... 11

               d)   The preamble is also not necessary to "understand" the
                    alleged invention. ......................................................................... 14

          3.   If any preamble features are to be imposed on the claim, it should
               be limited to the inhaler device only. ....................................................... 17

     B.   The plain meaning of the "gripping aid" language places the gripping aid
          between two boundaries:  the edge of the mouthpiece and next to the
          actuator when the mouthpiece is closed.  Plaintiffs' construction results in
          claims with the practical consequence of erasing that critical boundary. ............. 19

i

1.     The mouthpiece's gripping aid cannot be in just any "close" location on the mouthpiece. ........................................................ 19

2.     Plaintiffs' superficial treatment of "proximate to" ignores the reality of their alleged invention and what is needed for the claims' gripping aid placements to comply with the rest of the claim language. .............................................................................................. 21

3.     Even if the Court seeks to apply Plaintiffs' vague construction, it still should make clear that "close to" does not encompass locations on the mouthpiece's surface. ...................................................... 25

V.     CONCLUSION. ................................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*180s, Inc. v. Gordini U.S.A., Inc.*,
699 F. Supp. 2d 714 (D. Md. 2010) ................................................................................. 23, 24

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
618 F.3d 1354 (Fed. Cir. 2010) ............................................................................................... 7

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
919 F.3d 1320 (Fed. Cir. 2019) ..................................................................................... passim

*Bed Bath & Beyond Inc. v. Sears Brands, LLC*,
No. 08-cv-5839 (SDW) (MCA), 2010 WL 4291505 (D.N.J. Oct. 22, 2010) ............................. 8

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998) ............................................................................................. 15

*C.W. Zumbiel Co., v. Kappos*,
702 F.3d 1371 (Fed. Cir. 2012) ............................................................................................... 7

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ....................................................................................... passim

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998) ............................................................................................. 16

*Comput. Stores Nw., Inc. v. Dunwell Tech, Inc.*,
No. CV-10-284-HZ, 2011 WL 2160931 (D. Or. May 31, 2011) ............................................. 23

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ........................................................................................... 6, 7

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012) ...................................................................... 11, 12, 16, 17

*Eaton Corp. v. Rockwell Int'l Corp.*,
323 F.3d 1332 (Fed. Cir. 2003) ............................................................................................... 7

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
435 F.3d 1366 (Fed. Cir. 2006) ............................................................................................... 6

*Fisher-Price, Inc. v. Graco Children's Prods., Inc.*,
154 F. App'x 903 (Fed. Cir. 2005) ....................................................................................... 6, 7

*Georgetown Rail Equip. Co. v. Holland L.P.*,
867 F.3d 1229 (Fed. Cir. 2017) ..................................................................................... passim

iii

*HBAC Matchmaker Media, Inc. v. Google Inc.*,
  650 F. App'x 990 (Fed. Cir. 2016) ...................................................................... 16

*Helsinn Healthcare S.A. v. Dr. Reddy's Labs., Ltd.*,
  No. 11-3962 (MLC), 2015 WL 1817109 (D.N.J. Apr. 22, 2015) ............................................. 8

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) ...................................................................... 16

*ICM Controls Corp. v. Honeywell Int'l, Inc.*,
  256 F. Supp. 3d 173 (N.D.N.Y. 2017) .................................................................... 7

*In re Ciprodex*, No. 15-cv-5756 (PGS) (DEA),
  2017 WL 2784410 (D.N.J. June 27, 2017) .............................................................. 4, 7

*Izzo Golf, Inc. v. Taylor Made Golf Co.*,
  No. 04-CV-6253T, 2008 WL 2559370 (W.D.N.Y. June 23, 2008) .................................. 21, 22

*Kinzenbaw v. Case, LLC*,
  318 F. Supp. 2d 778 (N.D. Iowa 2004) .................................................................. 23

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ................................................................... 16, 18

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) .................................................................................... 23

*One World Techs., Ltd. v. Rexon Indus. Corp.*,
  No. 04 C 4337, 2005 WL 1377897 (N.D. Ill. June 3, 2005) ..................................... 22

*Poly-Am., L.P. v. GSE Lining Tech., Inc.*,
  383 F.3d 1303 (Fed. Cir. 2004) .................................................................. 11, 12

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
  739 F.3d 1367 (Fed. Cir. 2014) ....................................................................... 11

*Rowe v. Dror*,
  112 F.3d 473 (Fed. Cir. 1997) .................................................................. 16, 17

*Seirus Innovative Accessories, Inc. v. Balboa Mfg. Co.*,
  No. 09-CV-2274-H (WMC), 2012 WL 12845596 (S.D. Cal. Feb. 13, 2012) .......................... 23

*Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*,
  Case No. 09-CV-0102 (Doc. No. 139) ................................................................... 23

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*,
  810 F.2d 1113 (Fed. Cir. 1987) ......................................................................... 4

*Sumitomo Dainippon Pharma Co. v. Emcure Pharm. Ltd.*,
    887 F.3d 1153 (Fed. Cir. 2018) ............................................................................ 21

*SunRace Roots Enter. Co. v. SRAM Corp.*,
    336 F.3d 1298 (Fed. Cir. 2003) ............................................................................ 17

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................. 21

## Other Authorities

Manual of Patent Examining Procedure § 2173.05(e) ...................................................... 4

v

## TABLE OF ABBREVIATIONS

| PARTIES | |
|---|---|
| Boehringer or BI or Plaintiffs | Plaintiffs Boehringer Ingelheim Pharmaceuticals, Inc.; Boehringer Ingelheim International GmbH; and Boehringer Ingelheim Pharma GmbH & Co., KG |
| Lupin | Defendants Lupin Atlantis Holdings, S.A.; and Lupin Limited. |
| **DEFINED TERMS** | |
| '676 patent | Certified U.S. Patent No. 7,694,676, attached as **Exhibit 1** (ECF No. 76-2) to the Declaration of Matthew V. Anderson, Esq., dated November 6, 2019, in Support of Defendants' Opening Claim Construction Brief (LUPIN(TIO)0262953-62) |
| '676 patent PH | Excerpts of Certified Prosecution History of U.S. Patent No. 7,694,676, attached as **Exhibit 2** (ECF No. 76-3) to the Declaration of Matthew V. Anderson, Esq., dated November 6, 2019, in Support of Defendants' Opening Claim Construction Brief (LUPIN(TIO)0264873-5217) |
| EP 0703800 B1 | European Patent No. 0703800 B1, attached as **Exhibit 4** (ECF No. 76-5) to the Declaration of Matthew V. Anderson, Esq., dated November 6, 2019, in Support of Defendants' Opening Claim Construction Brief (LUPIN(TIO)0268616-21; English translation at LUPIN(TIO)0280197-202) |
| EP 0911047 A1 | European Patent No. 0911047 A1, attached as **Exhibit 5** (ECF No. 76-6) to the Declaration of Matthew V. Anderson, Esq., dated November 6, 2019, in Support of Defendants' Opening Claim Construction Brief (LUPIN(TIO)0268622-29; English translation at LUPIN(TIO)0280203-08) |
| WO 03/084502 | International Publication No. WO 03/084502 A1, attached as **Exhibit 6** (ECF No. 76-7) to the Declaration of Matthew V. Anderson, Esq., dated November 6, 2019, in Support of Defendants' Opening Claim Construction Brief (LUPIN(TIO)0264962-91) |
| JCC | Joint Claim Construction and Prehearing Statement, filed on October 15, 2019 (ECF No. 64) |
| PTO | United States Patent and Trademark Office |

vi

Lupin respectfully submits this Responsive brief in support of its proposed constructions.

## I.    INTRODUCTION.

Plaintiffs agree that the '676 patent is not directed to a new drug or drug formulation, but rather to a particular inhaler design.  (ECF No. 77, Pls.' Opening Br. at 1).[1]  Plaintiffs admit that the '676 patent involves "the current generation" of the HandiHaler device, HandiHaler II (*id*. at 2), as opposed to the prior art HandiHaler I.  These two devices can be compared as follows:

**HandiHaler I (prior art, January 2004)**



```
1. dust cap
2. mouthpiece
3. base
4. piercing button
5. center chamber
```

**HandiHaler II**



```
1. dust cap (lid)
2. mouthpiece
3. mouthpiece ridge
4. base
5. green piercing button
6. center chamber
7. air intake vents
```

(Ex.[2] 7, Spiriva® HandiHaler® Prescribing Information (Jan. 2004) at 16 (LUPIN(TIO)0270135);

---

[1] Plaintiffs assert (without analysis) that their current HandiHaler II device is an embodiment of the claims; nevertheless, Lupin uses a different inhaler design that precludes infringement here.

[2] "Ex." as used herein refers to the exhibits attached to the Declaration of Matthew V. Anderson,

1

Ex. 8, Spiriva® HandiHaler® Prescribing Information (Feb. 2018) at 15 (LUPIN(TIO)0280263) (mouthpiece ridge highlighted in yellow; red boxes added for purportedly new features); *see also* ECF No. 76, Defs.' Opening Br. at 2-3 (specification admits capsule inhaler device having mouthpiece above without ridge was known from, *e.g.,* EP 0703800 B1 or EP 0911047 A1)).

Plaintiffs also admit that their claimed inhaler's feature was intended to reflect improvements to *existing* prior art devices. (Pls.' Opening Br. at 2 ('676 patent "teaches inhaler devices that improve on prior inhalers")). As Plaintiffs' own documents confirm, what **is not new** with the HandiHaler II device is putting the drug into a capsule, or using a piercing button to release the drug from the capsule, as with, for example, HandiHaler I. Rather, Plaintiffs propose that it was new to use an actuator to simultaneously pierce the drug capsule and release the device's lid (*i.e.,* a double functioning actuator with a single hinge); and put a "gripping aid" in a particular location to help, for example, arthritic patients. (*Id.* at 2-3).

But, as the FDA-approved prior HandiHaler I device confirms, patients plainly can use tiotropium capsule inhalers without either of these two features. As discussed below, these allegedly inventive features are not enough to render the preamble's prior art inhaler contextual recitation as limiting; and do not justify placing the "gripping aid" in just any random location "close to" the actuating member when the mouthpiece is closed.

---

Esq., dated November 6, 2019 (Exhibits 1-6), and the exhibits attached to the Supplemental Declaration of Matthew V. Anderson, Esq., filed concurrently herewith (Exhibits 7-9).

## II.    THE PARTIES' PROPOSED CONSTRUCTIONS.

| Claim Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "inhaler for inhaling powdered pharmaceutical compositions from capsules" | Plaintiffs contend this preamble term is limiting, but does not require further construction. | This phrase is not a claim limitation because it is contained within the preamble of the claim.<br><br>To the extent the Court determines that this portion of the preamble is a claim limitation, it should be construed as follows:<br><br>"inhalation device" |
| "gripping aid disposed proximate to an edge of the mouthpiece and proximate to the actuating member when the mouthpiece is closed" | "gripping aid located close to an edge of the mouthpiece and close to the actuating member when the mouthpiece is closed" | Plain and ordinary meaning which is:<br><br>"gripping aid disposed next to or immediately before / after an edge of the mouthpiece and next to or immediately before / after the actuating member when the mouthpiece is closed" |

(ECF No. 64, JCC at 3).

## III.    A PERSON OF ORDINARY SKILL IN THE ART.

Plaintiffs' proposed person of ordinary skill differs from Lupin's, where a person of ordinary skill will work in materials science, mechanical engineering, and related fields, and at the relevant time was capable of designing and making devices for delivering powders or aerosols (*e.g.*, dry powder inhalers and similar pharmaceutical delivery devices).  Such a person would have had a Ph.D. (*or* a bachelor's degree with more experience) in materials science, mechanical engineering, or a related field; *or* a master's degree in materials science, mechanical engineering, or a related field and at least a year of work experience in materials science, mechanical engineering, or a related field. **Plaintiffs do not articulate any proposed claim construction impacted by the parties' competing definitional differences for one of ordinary skill**.  Lupin reserves the right to respond if, in fact, Plaintiffs articulate one.

**IV.    PLAINTIFFS' PROPOSED CONSTRUCTIONS SHOULD BE REJECTED, AND LUPIN'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED.**

    **A.    The preamble phrase, "[a]n inhaler for inhaling powdered pharmaceutical compositions from capsules," is not needed to give an antecedent basis to the body of the claims; and is not a fundamental characteristic of the purported claim improvements.**

Plaintiffs argue that two of the Federal Circuit's four guideposts apply to make its preamble limiting:  (1) antecedent basis; and (2) fundamental characteristic.  *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed. Cir. 2002); *see also Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236-37 (Fed. Cir. 2017) (discussing the four guideposts and affirming the district court's finding that the preamble was not limiting).  But neither guidepost alone, or together, compels construing the '676 patent claims' preambles as limiting in view of the alleged invention here.  *See Georgetown Rail*, 867 F.3d at 1236-37.

    **1.    The preamble is not needed to provide an antecedent basis to "the capsules" when the phrase "capsule holder" precedes all uses of "the capsules" in the body of the independent claims.**

When a claim term recites "the" or "said" feature in the body of the claim, this "simply indicates that a new feature is not being introduced in the claim.  Instead, reference to an earlier recited feature is being made in order to avoid any indefiniteness rejection by the patent examiner."  *In re Ciprodex*, No. 15-cv-5756 (PGS) (DEA), 2017 WL 2784410, at *8 (D.N.J. June 27, 2017); *see also* MANUAL OF PATENT EXAMINING PROCEDURE § 2173.05(e) ("A claim which refers to 'said aluminum lever,' but recites only 'a lever' earlier in the claim, is indefinite because it is uncertain as to the lever to which reference is made.").  Plaintiffs have made no effort to show that absent a limiting preamble, any indefiniteness-type problem would or could arise for a claim element for lack of antecedent basis.  *See Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116-17 (Fed. Cir. 1987) (finding a claim directed to a "metal door assembly" that had elements for "a collar on said sleeve," and "retracted position adjacent said

4

collar" did not create antecedent basis indefiniteness problem, especially when "Kinkead has not argued that the device contains more than one 'collar', or that it did not know what the claims meant."). That alone should end the inquiry, especially when the "antecedent basis" approach to construing preambles "may limit claim scope," but it is not presumed that it must. *Catalina*, 289 F.3d at 808; *see also Georgetown Rail*, 867 F.3d at 1236 (noting preamble "may be limiting" if four guideposts apply, and will not be if the body of the claims are structurally complete).

But even assuming that an antecedent basis is required for "the capsule" or "the capsules" claim elements here, the body of the '676 patent claims more than sufficiently provides it without need to resort to the preamble, particularly when viewed in context. More specifically, the body of the '676 patent claims are clear what "the capsules" are, and where they go—in "a capsule holder":

> a lower part,
> a plate which can be latched to the lower part and with
>     which the lower part can be closed off, and a capsule
>     holder for receiving the capsules, this holder being
>     adapted to be lowered into the lower part,
> a mouthpiece latchable to the plate,

(Ex. 1, '676 patent at col. 8, l. 66 – col. 9, l. 26 (Claim 1)). The body of claim 1 states what happens to the capsules once inside the capsule holder: an actuating member with a pin will pierce the capsule holder, which in turn will lead to piercing the capsule within the holder:

> an actuating member which can be moved out a resting
>     position and thereby interacts with at least one pin which
>     can be made to pierce the capsule holder, wherein:

*        *        *

> the actuating member is constructed as a double function actuating member by means of which, in a first actuation, the closure element can be released from the lower part in order to swivel the lid, and with which, in a second actuation, the capsule is pierced, the actuating member including a recess to receive and engage the closure element when the lid covers the mouthpiece in the closed position.

(*Id.*; *see also id.* at col. 10, ll. 14-37 (Claim 13) (same)).

This recitation in the body of the claims of "a capsule holder for receiving" **before** using the phrase, "the capsules"; and subsequent discussion of an actuating member piercing the capsule holder **before** saying that "the capsule [already received in the holder] is pierced," is more than enough for one of ordinary skill in the art to figure out what capsule(s) are at issue in the body of the claim: the objects meant to go inside the capsule holder.

Further, the claim structure here also correlates to other claims where the Federal Circuit concluded that the body of the claims implied a sufficient antecedent basis. For example, in *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366 (Fed. Cir. 2006), the ITC, following Plaintiffs' approach to the analysis here, decided that a claim to "said zinc anode" lacked an antecedent basis because "the term 'zinc anode' does not appear in the claim prior to the term 'said zinc anode.'" *Id*. at 1369. The Federal Circuit reversed, finding that the claim body's prior recitation of an "'anode gel' was, by implication, the antecedent basis for 'said zinc anode.'" *Id*. at 1371. Similarly here, "the capsule" or "the capsules" has antecedent basis given the prior recitation of "a capsule holder." *See also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1319 (Fed. Cir. 2005) (finding "said longitudinal axis" had an antecedent basis "by implication," namely "the longitudinal axis of the rod"); *Fisher-Price, Inc. v. Graco Children's Prods., Inc.*, 154 F. App'x 903, 909 (Fed. Cir. 2005) (finding "upper seating

6

surface" provided antecedent basis by implication for "said seating area").

Thus, to understand "the capsules" or "the capsule" in the claim body, there is no need to look for an antecedent in the preamble. *See Am. Med. Sys., Inc. v. Biolitec, Inc.,* 618 F.3d 1354, 1359 (Fed. Cir. 2010) (finding "the preamble term 'photoselective vaporization of tissue' does not provide a necessary antecedent basis for the term 'the tissue' in the bodies of each of the independent claims," and thus the preamble was not limiting); *ICM Controls Corp. v. Honeywell Int'l, Inc.*, 256 F. Supp. 3d 173, 184, 192 (N.D.N.Y. 2017) (finding preamble language "for actuating two or more actuator devices" was not needed to provide antecedent basis for "said [actuator] devices" or "relay actuator coil" in the claim body, and thus was not limiting); *see also Cross Med.*, 424 F.3d at 1319; *Fisher-Price*, 154 F. App'x at 909.  There is no indefiniteness confusion; and the term is already linked, if not expressly then at least by implication, to the capsules for the capsule holder that the claim body previously recites.

This tie in the body of the claims between the capsule holder and "the" capsule/capsules differentiates Plaintiffs' cited cases, such as *In re Ciprodex*, where the claim body exclusively used "the composition," and the preamble exclusively used the term "composition" divorced from any of the "said" or "the" composition language.  2017 WL 2784410, at *7-8; *see also C.W. Zumbiel Co., v. Kappos*, 702 F.3d 1371, 1385 (Fed. Cir. 2012) (noting the body of the claim never used the term "container" without the modifier "the" or "said" container; "container" without such a modifier was exclusively used in the preamble); *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339-40 (Fed. Cir. 2003) (observing that the claim body used "said vehicle master clutch," "said first clutch," "said drive train" and "the vehicle engine" terms; the only place that ever used such terms in an unqualified way was in the preamble, rendering it

limiting).[3]

Thus, Plaintiffs cannot invoke the "antecedent basis" guidepost as a rationale to construe the preamble as limiting language.

### 2. The preamble does not disclose a fundamental characteristic of the claimed invention.

When the Federal Circuit classifies a preamble feature as a fundamental characteristic of the claimed invention, it focuses on the particular elements that are new and improved, or which differentiate the claimed invention from the prior art. *See Georgetown Rail*, 867 F.3d at 1236. Here, "inhaling powdered pharmaceutical compositions from capsules" is not a new inhaler feature; rather, these were old, known, and by Plaintiffs' own admission, not what the alleged improvements of the '676 patent involved.

#### a) The preamble needs to involve a structure that is itself patentable, and <u>not</u> found in the prior art, to make a preamble structure a limiting one.

The '676 patent's preamble is analogous to the non-limiting preamble in *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320 (Fed. Cir. 2019). In *Arctic*, the parties disputed whether the '822 patent claim's preamble to a "personal recreational vehicle comprising" an electrical distribution system, which in turn contained a power distribution module, housing, and distribution harness, limited the scope of electric systems to those used in personal recreational vehicles. *Id.* at 1327-30.

The Federal Circuit acknowledged that the *Arctic* preamble "claim language does recite 'additional structure' (the personal recreational vehicle) over and above the structure recited in

---

[3] In *Helsinn Healthcare S.A. v. Dr. Reddy's Labs., Ltd.*, No. 11-3962 (MLC), 2015 WL 1817109, at *1 (D.N.J. Apr. 22, 2015), the parties *agreed* that the preamble words preceding "formulation" in the preamble were limitations providing antecedent basis for "said formulation" in the claim's body. The court in *Bed Bath & Beyond Inc. v. Sears Brands, LLC*, No. 08-cv-5839 (SDW) (MCA), 2010 WL 4291505, at *7 (D.N.J. Oct. 22, 2010) construed the preamble as limiting in order to breathe life and meaning into the claims, a guidepost Plaintiffs do not rely on here.

the body of the claims (the power distribution module). ***But not every preamble reference to additional structure is limiting***." *Id*. at 1329 (emphasis added).

Here, Plaintiffs, like the *Arctic* patentee, insist that the specification statements show the importance of the capsule inhaler structure. Plaintiffs argue the specification calls powdered inhalation capsules critical to the invention; and that the term "the inhaler" and other terms "appear throughout the patent." (Pls.' Opening Br. at 7-8). As in *Arctic*, that is not enough. "[E]ven when the structure is noted in the specification—even, indeed, when the structure is 'underscored as important by the specification,'" that "does not suffice to be part of the definition of the invention, understood in light of the specification." *Arctic*, 919 F.3d at 1329 (quoting *Catalina*, 289 F.3d at 808). The Federal Circuit explained that Arctic's "vehicle language here does not supply 'antecedent basis' for terms in the body defining a module; nor does it supply structure needed to make the body itself a 'structurally complete invention,'" it just describes the overall "structure of which the body-recited module is a part." *Id*. (quoting *Catalina*, 289 F.3d at 808-09). Similarly here, the allegedly novel features of the '676 patent (adding a gripping aid in a particular location on the mouthpiece by the actuator, or using the actuator structure to also open the lid at the same time) involve modifying sub-components within a larger, overall previously-known, capsule inhaler device.

> **b)      Plaintiffs identify no alleged structural improvement that is not already found in the body of the claims; the preamble contains prior art elements.**

Here, like the *Arctic* patentee, Plaintiffs cannot and "do[] not argue that the preamble language at issue was relied on during prosecution to distinguish prior art so as to make it part of the invention." *Arctic*, 919 F.3d at 1329. Indeed, Plaintiffs admit that "the '676 Patent makes clear that the claimed inventions are drawn to an ***improved*** inhaler" that already existed to deliver powdered pharmaceutical compositions from capsules. (Pls.' Opening Br. at 7 (emphasis

added)).    Plaintiffs' argument that its invention improves access to the pharmaceutical composition is followed by an admission that this comes about *not* by improving a powder inside the capsule, *nor* by improving the capsule itself, but by "improv[ing] the known inhalers still further in terms of their handling," allegedly by including a double function actuating member, "quick and reliable opening of the lid," and "a gripping aid."  (*Id.* at 8).  These structural elements that Plaintiffs label as the specific improvements *are in the body of the claim*:

> a lid which covers the mouthpiece in a closed position and latches it by means of a closure element, the lower part, the plate, the mouthpiece and the lid being hinged together by means of a single joint, and
> an actuating member which can be moved out a resting position and thereby interacts with at least one pin which can be made to pierce the capsule holder, wherein:
> the mouthpiece has a gripping aid by means of which the mouthpiece can be flipped open, away to the side, the gripping aid disposed proximate to an edge of the mouthpiece and proximate to the actuating member when the mouthpiece is closed

> the actuating member is constructed as a double function actuating member by means of which, in a first actuation, the closure element can be released from the lower part in order to swivel the lid, and with which, in a second actuation, the capsule is pierced, the actuating member including a recess to receive and engage the closure element when the lid covers the mouthpiece in the closed position.

(Ex. 1, '676 patent at col. 9, ll. 9-10 (Claim 1) (improved hinge); col. 9, l. 14 (gripping aid); col. 9, ll. 19-26 (double-function actuating member) (highlighting added)).

Plaintiffs thus cannot show that *any* of the alleged improvements to the powdered capsule inhalers that purportedly differ from their prior HandiHaler I, for example, appear in the preamble.  Rather, as in *Arctic*, the "vehicle in the preamble is entirely conventional apart from

10

the improvement in the body of the claims." *Arctic*, 919 F.3d at 1329-30.  Since "the preamble is wholly conventional while only the body of the claim identifies an improvement, that choice is a powerful reason to deny the preamble the limiting effect it would have had," especially when Plaintiffs here chose *not* to use the "'improvement' transitional phrase" used in the Jepson[4] claim format that would normally signal that the patentee intended a limiting preamble.  *Id*. at 1330.

**c)**      **Plaintiffs' cited cases are distinguishable for the same reasons the Federal Circuit identified in *Arctic*.**

The Federal Circuit also explained why "the preamble [in *Arctic*] differs crucially from those in cases such as *Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1373 (Fed. Cir. 2014); *Deere* [*& Co. v. Bush Hog, LLC*], 703 F.3d [1349,] 1358 [(Fed. Cir. 2012)]; and *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004)," the very cases Plaintiffs rely on here to argue their preamble should be limiting.  *Arctic*, 919 F.3d at 1330.  Those same points of differentiation that the Federal Circuit invoked apply here.

First, Plaintiffs assume that all that is required to satisfy *Proveris*, *Deere* and *Poly-American* is to find multiple statements in the specification that the invention "relates to" inhalers; state that the invention involves a "concern" specific to inhalers; or otherwise is needed to understand the claims.  (Pls.' Opening Br. at 7).  As *Arctic* explains, that is not the rule those cases set forth.

In *Proveris*, the specification called the invention "producing a 'sequential set of images'" that captured "the time evolution of the spray."  739 F.3d at 1373.  In the claims, "the only reference … to the inventive concept of capturing a sequence of images in order to characterize the time evolution of the spray plume" was in the preamble.  *Id*.; *see also id*. at 1372 (claim language).  Thus, since *only* the preamble contained the inventive elements, the preamble

---

[4] Preambles that use the Jepson claim format "generally indicate[] intent to use the preamble to define the claimed invention, thereby limiting claim scope."  *Catalina*, 289 F.3d at 808.

11

language was properly limiting.

In *Poly-American*, the Abstract identified the blown-film textured liner as the "textured surface to provide improved soil gripping properties." (Ex. 9, U.S. Pat. No. 5,763,047 at Abstract). The *Poly-American* specification insisted that past film-forming approaches could not be used with blown-film techniques (*id.* at col. 1, ll. 19-22), and specifically stated that a "need exists … for a blown-film textured liner," thereby tying the new and inventive concept to the blown-film elements that had not previously been achieved, (*id.* at col. 1, l. 50). The specification further described a method of the invention as one "for producing the inventive blown-film textured liner." (*Id.* at col. 2, ll. 3-4). These statements caused the Federal Circuit to conclude that the "inventor considered that the 'blown-film' preamble language represented an important characteristic of the claimed invention" for textured landfill liners, as distinct from the prior art "cast film" product. *Poly-Am.*, 383 F.3d at 1310. Again, the ***inventive*** blown-film texture feature appeared only in the preamble, and not in the body of the claim, which is what justified finding the preamble limiting. *Id*. at 1309-10.

In *Deere*, the phrase "rotary cutter deck" was held to be a preamble limitation because it provided antecedent basis to the claims; ***and*** was "necessary to understand the subject matter encompassed by the claim"—notably a claim element directed to a "box section having torsional stiffness." 703 F.3d at 1358. In order to calculate that stiffness in the claim body, one of ordinary skill needed to assess whether it would "withstand the torsional loads imposed by the operation of a rotary cutter." *Id.* And, the specification again specifically tied the improvement to the rotary cutter deck itself. *Id.*

By contrast here, none of the alleged ***inventive improvements*** that the '676 patent specification, prosecution history, or Plaintiffs' brief identify as the specific improvements over

12

the prior capsule powder inhalers—a gripping aid in a particular location, a double-functioning

actuator with a particular single hinge design—appear in the preamble. As noted above, **all** of

these purportedly novel elements are contained within the structural elements found in the body

of the claims. The preamble elements remain old, as shown with Plaintiffs' prior art HandiHaler

I—which put tiotropium bromide powder inside capsules for an inhaler's capsule holder, with an

actuator that pierced them to release the medication, which the patient then inhaled:

**<u>HandiHaler I (prior art, January 2004)</u>**



1. dust cap
2. mouthpiece
3. base
4. piercing button
5. center chamber



2) **INSERT:** Place the capsule in the center chamber. It does not matter which end of the capsule is placed in the chamber. (Figure 2)



Taking your dose of SPIRIVA.

4) **PRESS:** Hold the HandiHaler device with the mouthpiece upwards and press the piercing button completely in once, and release. This makes holes in the capsule and allows the medication to be released when you breathe in. (Figure 4)

(Ex. 7, Spiriva® HandiHaler® Prescribing Information (Jan. 2004) at 16-18 (LUPIN(TIO)0270135-37)).

13

Even the PTO's stated reasons for allowing the '676 patent claims had nothing to do with creating a new powder-capsule inhaler—those already existed. The Examiner explained:

> 3.    The following is an examiner's statement of reasons for allowance: The prior art made of record does not teach the specific inhaler apparatus having the specific structure and relationship as claimed in claims 1 and 13 including the combination of a

> mouthpiece with a gripping aid disposed on the proximate edge of the mouthpiece and proximate to the actuating member when the mouthpiece is closed, in addition to an actuating member including a recess to receive and engage the closure element when the lid covers the mouthpiece in the closed position.

(*See* Ex. 2, '676 patent PH, 11/21/2008 Notice of Allowance at 3-4 (LUPIN(TIO)0265066-67)). Thus, as the Examiner observed, the allegedly inventive improvements were the combination of a lid design that could be flipped open with a single hinge; and relocating the gripping aid to a position at the mouthpiece edge, and next to the actuator.

*None* of the elements that the Examiner identified in the Reasons for Allowance appear in the preamble. Rather, the allegedly inventive features involve component parts of the inhaler; and these component parts are explicitly outlined *solely* in the body of the claims.

Thus, since none of Plaintiffs' allegedly inventive improvements are found in the preamble, the preamble fails to disclose a fundamental characteristic of the claimed invention.

### d)      The preamble is also not necessary to "understand" the alleged invention.

Plaintiffs next insist that the ordinarily-skilled artisan could not possibly read the body of their claims and "know that the claimed invention is an inhaler for inhaling powdered pharmaceutical compositions from capsules." (Pls.' Opening Br. at 9).

The first problem with Plaintiffs' position is that this assumes the very conclusion under

14

debate—that the "invention" involved [1] improvements to powdered pharmaceutical compositions in capsules, versus [2] improvements to non-capsule structural components found in prior inhalers. The allegedly inventive elements involved the latter, not the former.

Plaintiffs' argument has a second, and more critical, problem: if any preamble language qualifies as a description of an intended use rather than structural language, it is the phrase, "for inhaling powdered pharmaceutical compositions from capsules." *See, e.g.*, *Georgetown Rail*, 867 F.3d at 1236-37 (confirming district court's finding that preamble term "mounted on a vehicle for movement along the railroad track" was not limiting as it merely describes the "principle intended use of the invention"); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1350 (Fed. Cir. 1998) (finding preamble language "for use with a tissue sampling device" to be a statement of intended use or purpose and not limiting).

Plaintiffs argue that limiting the claims to a powdered pharmaceutical capsule composition is "foundational" to how the other features of the invention are understood. (Pls.' Opening Br. at 9). Again, under *Arctic*, that isn't the right question. The question is whether a person of ordinary skill in the art needs the preamble to understand the alleged *inventive* features. Here, they don't. The specification recognizes powdered capsule inhalers were already known in the prior art. Plaintiffs' brief admits that the alleged improvements were made upon the pre-existing HandiHaler I to make the HandiHaler II. (*Id.* at 2, 7). The alleged inventive features involving the combination of mouthpiece and gripping aid relative to the capsule holder and actuator, notably the claimed pin to both pierce the capsules and help open the lid, are all included within the body of the claim.

Plaintiffs next complain that without incorporating the "powdered pharmaceutical composition" language into the meaning of capsules, their claims could cover other mist or

15

metered dose inhalers that involve different mechanisms.  (Pls.' Opening Br. at 10).

*First*, Plaintiffs fail to explain why they contend any particular mist or metered dose inhalers would meet each and every element of the claim body in a seemingly unacceptable way.

*Second*, the whole point of statement-of-intended-purpose language in a preamble is that it is traditionally non-limiting.  *See Arctic Cat*, 919 F.3d at 1328; *Catalina*, 289 F.3d at 808 (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)); *Georgetown Rail*, 867 F.3d at 1236-37; *Deere*, 703 F.3d at 1358.

*Third*, Plaintiffs ignore that their dependent claim 16 calls for an inhaler "according to claim 1 or 13 for inhaling powdered pharmaceutical compositions."  (Ex. 1, '676 patent at col. 10, ll. 44-45).  If the stated goal or purpose of "inhaling powdered pharmaceutical compositions" was already part of claims 1 and 13 via the preamble language, claim 16's language would be redundant.  Claim 16, not the preamble of claims 1 and 13, is where Plaintiffs apparently sought to limit their claims to inhalers for powdered pharmaceutical compositions (as opposed to, *e.g.*, liquid mist inhalers).  This is an independent ground to not limit claims 1 and 13 with the preamble's "for inhaling powdered pharmaceutical compositions from capsules" terms. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004); *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (holding district court's construction improper because it rendered a dependent claim "completely superfluous and redundant of" an independent claim); *HBAC Matchmaker Media, Inc. v. Google Inc.*, 650 F. App'x 990, 992-93 (Fed. Cir. 2016) (rejecting an attempt to read "a TV system" into the term "head end system" where other claims "specifically add a TV limitation," because it "introduces avoidable redundancy into the language of the claims"); *see also Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1374-76 (Fed. Cir. 2014); *SunRace Roots Enter. Co. v.*

*SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003) (the presumption against construing independent claims to include limitations dependent claims recite "is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim").

Thus, viewing the claims in context, no guideposts favor construing the preamble as a limitation. Rather, the preamble found in claims 1 and 13 here is not limiting at all.

### 3. If any preamble features are to be imposed on the claim, it should be limited to the inhaler device only.

As noted above, the preamble is not limiting. Nevertheless, Lupin has provided an alternative construction if the preamble is somehow limiting, such that the only incorporated structure is inhaler device. Plaintiffs complain that this would "improperly read the other words of the preamble … out of the claim." (Pls.' Opening Br. at 10). Not so.

***First***, as noted above, when the Federal Circuit finds preambles limiting, it focuses on structural features tied to the invention. Even assuming Plaintiffs' cited features of a gripping aid, actuator type, etc. are truly inventive, again, those involve inhaler device structures, not capsule structures or contents.

***Second***, as also noted above, "for inhaling powdered compositions from capsules" is a classic statement of purpose that is rarely, if ever, limiting. *Arctic Cat*, 919 F.3d at 1328; *Catalina*, 289 F.3d at 808 (quoting *Rowe*, 112 F.3d at 478); *Georgetown Rail*, 867 F.3d at 1236-37; *Deere*, 703 F.3d at 1358.

***Third***, the specification and the Examiner recognized a mouthpiece feature was in the prior art inhalers (and was in Plaintiffs' own HandiHaler I as well, as noted in Section I, above). (*See, e.g.*, Ex. 1, '676 patent at col. 1, ll. 14-28; Ex. 2, '676 patent PH, 10/30/2007 Office Action at 8-9 (LUPIN(TIO)0264955-56); *see also* Ex. 4, EP 0703800 B1 (LUPIN(TIO)0268616-21;

17

LUPIN(TIO)0280197-202); Ex. 5, EP 0911047 A1 (LUPIN(TIO)0268622-29; LUPIN(TIO)0280203-08)).  Even assuming true Plaintiffs' implied assertion that only powdered capsule inhalers will have mouthpieces, then the claim body's mouthpiece plus a capsule holder in the context of an inhaler device is sufficient to signal to the ordinarily-skilled artisan the needed structure; and if a name must be given to the overall arrangement for it to have meaning, then the only meaning that is needed is an inhaler device.

*Fourth*, Plaintiffs' expansive preamble construction has the effect of rendering redundant claim 16, with the powdered-composition language appearing as a separate element modifying the inhaler.  (Ex. 1, '676 patent at col. 10, ll. 44-45).  Lupin's construction, where the preamble is limited to an inhaler device, avoids this problem.

In sum, while Plaintiffs clearly wish today that they had either used the Jepson claim format or changed the body of their claims to mandate having their independent claims' 1 and 13 capsules contain a "powdered" pharmaceutical composition for inhalation; or otherwise incorporated the dependent claim 16 elements into the body of claims 1 and 13, the claim construction process cannot rewrite claims as Plaintiffs wish they would have written them.  The terms must be construed in the surrounding context of the claims, specification, and prosecution history, from the ordinarily-skilled artisan's perspective.  *See, e.g.*, *Liebel-Flarsheim*, 358 F.3d at 911 (noting the Federal Circuit has "admonished against judicial rewriting of claims").

Thus, Lupin respectfully submits that the claims here should be construed so that the preamble of independent claims 1 and 13 is not limiting; and even if an aspect of the preamble is deemed structurally necessary to the claims, that structure should be limited to at most the "inhaler device," not mandate the particular purpose of inhaling powdered compositions from whatever capsules are placed in the capsule holders.  Thus, Lupin's proposed approach to the

18

preamble should be adopted here.

**B.      The plain meaning of the "gripping aid" language places the gripping aid between two boundaries:  the edge of the mouthpiece and next to the actuator when the mouthpiece is closed.  Plaintiffs' construction results in claims with the practical consequence of erasing that critical boundary.**

Plaintiffs seek to construe "proximate" as "close to" because of patent drafting conventions.  (Pls.' Opening Br. at 10).  Plaintiffs assert that Lupin's effort to ensure that the gripping aid is actually in between the two boundary locations called for by the claims "is overly restrictive."  (*Id*. at 11).  To the contrary, Lupin's insistence that Plaintiffs be precluded from their overly broad "close to" phrasing is because Plaintiffs seemingly seek to eviscerate, rather than give meaning to, this claim element, particularly given the prosecution history here.

**1.      The mouthpiece's gripping aid cannot be in just any "close" location on the mouthpiece.**

As Plaintiffs' brief acknowledges, the HandiHaler II device purportedly improved the HandiHaler I device to include a particular kind of gripping aid.  (Pls.' Opening Br. at 2-3).  Comparing the HandiHaler I (no "mouthpiece ridge" gripping aid); the HandiHaler II (with the "mouthpiece ridge" gripping aid highlighted in yellow); and the '676 patent's Figure 3 shows it:

**HandiHaler I**                          **HandiHaler II**

19

**'676 patent Figure 3**



(Ex. 7, Spiriva® HandiHaler® Prescribing Information (Jan. 2004) at 16 (LUPIN(TIO)0270135) (green color on "4. piercing button" added); Ex. 8, Spiriva® HandiHaler® Prescribing Information (Feb. 2018) at 15 (LUPIN(TIO)0280263) (mouthpiece ridge highlighted in yellow; green color on "5. green piercing button" and red box added); Ex. 1, '676 patent at Figure 3 (highlighting added); Pls.' Opening Br. at 3 (Plaintiffs admitting that (i) item 17 in Figure 3 of '676 patent, highlighted in yellow above, is the gripping aid (Plaintiffs' opening brief colors it green); and (ii) item 7 in Figure 3, colored in green, is an actuator (Plaintiffs' opening brief colors it blue))).

This locational position of the gripping aid, according to the claims, must be "disposed proximate to an edge of the mouthpiece *and* proximate to the actuating member when the mouthpiece is closed...." (Ex. 1, '676 patent at col. 8, l. 66 – col. 9, l. 26 (claim 1) (LUPIN(TIO)0262961-62); col. 10, ll. 14-37 (claim 13) (LUPIN(TIO)0262962) (emphasis added)). The HandiHaler II shows the mouthpiece ridge "gripping aid" in yellow when the lid is open; Figure 3 in the '676 patent shows how this gripping aid (yellow) will then be situated next to the edge of the mouthpiece; *and* next to the actuating member (green) when the mouthpiece is closed. To achieve this, the gripping aid (yellow) will always be sandwiched *in between* this

20

mouthpiece edge and the actuating member (green) when the mouthpiece is closed.

> **2.** **Plaintiffs' superficial treatment of "proximate to" ignores the reality of their alleged invention and what is needed for the claims' gripping aid placements to comply with the rest of the claim language.**

Plaintiffs state that there is no explicit definition of "proximate" in their specification. (Pls.' Opening Br. at 11). But that does not end the analysis, because the Federal Circuit mandates considering claim language not solely by reference to dictionary definitions, but with review of "the intrinsic evidence of record," of which the claims are a part, which "is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Sumitomo Dainippon Pharma Co. v. Emcure Pharm. Ltd.*, 887 F.3d 1153, 1160 (Fed. Cir. 2018) (finding that the district court properly rejected the use of the extrinsic evidence (*i.e.*, textbooks) as the intrinsic record provided the necessary context to construe the disputed term).

Plaintiffs object to Lupin's construction, with the gripping aid "disposed next to or immediately before/after an edge of the mouthpiece; and next to or immediately before/after an edge of the actuating member when the mouthpiece is closed," but aside from labeling it "unduly limiting," Plaintiffs do not explain *why* they think so. (Pls.' Opening Br. at 12).

As Lupin's opening brief explained, the claims place the "gripping aid" disposed proximate to **both** the edge of the mouthpiece, and the actuating member when the mouthpiece is closed. (Defs.' Opening Br. at 8-10). A construction where "proximate" merely means, "close to," cannot achieve those expressly-written claim terms; Lupin's construction does. (*Id.*)

Plaintiffs cite *Izzo Golf, Inc. v. Taylor Made Golf Co.*, No. 04-CV-6253T, 2008 WL 2559370, at *7-8 (W.D.N.Y. June 23, 2008) to seemingly argue that "next to or immediately before/after" is too narrow a description for "proximate." (Pls.' Opening Br. at 12). *First*, Plaintiffs' own dictionary definition uses the phrasing "***immediately*** before or after in order" to

21

define "proximate."   (Pls.' Opening Br. at 11, citing "Ex. 3, *Proximate*, Random House Webster's College Dictionary (2d ed. 1997)" (emphasis added)).  *Second*, the patented golf bag in *Izzo* was designed to be a "backpack" style bag with two strap loops on one end of the bag; instead of a single-strap and loop golf bag that was attached at each end of the bag.  While the court did not require the end of the first strap and second strap portions to be "at or immediately" adjacent, the court still held "that they must be attached to the bag in locations that are ***at the same point*** or ***very near*** one another."  *Izzo*, 2008 WL 2559370, at \*7-8 (emphasis added). Neither party in *Izzo* articulated what practical difference resulted between "immediately adjacent" or "very near," but the construction the court ultimately gave in *Izzo* still is consistent with what Lupin's construction seeks to achieve here:  placing the gripping aid so that it simultaneously exists at both the edge of the mouthpiece and the actuating member (when the mouthpiece is closed).  Otherwise, the gripping aid cannot comply with each of the claims' placement rules and concepts.

Plaintiffs also cite *One World Techs., Ltd. v. Rexon Indus. Corp.*, No. 04 C 4337, 2005 WL 1377897 (N.D. Ill. June 3, 2005), but it actually conflicts with *Izzo* on the question of whether "proximate" has a readily understood plain and ordinary meaning.  *One World* decided that the ordinary meaning of "proximate" for laser beam placement when cutting with sawblades did not include "the exact point of reference" for the area to be cut, 2005 WL 1377897, at \*5; whereas *Izzo* found that the ordinary meaning of "proximate" *did* include straps attached "at the same point," 2008 WL 2559370, at \*8.  *One World* is distinguishable at least because it relied on teachings within the specification to conclude "the laser will be projected 'close' to the location of the cut" but not actually at the same place.[5]  2005 WL 1377897, at \*5.  Even so, Lupin's

---

[5] *See also Comput. Stores Nw., Inc. v. Dunwell Tech, Inc.*, No. CV-10-284-HZ, 2011 WL

construction is not seeking to place the gripping aid in a single-point location; its construction permits some flexibility with its "next to or immediately before/after" language.

In *Seirus Innovative Accessories, Inc. v. Balboa Mfg. Co.*, No. 09-CV-2274-H (WMC), 2012 WL 12845596, at *6 (S.D. Cal. Feb. 13, 2012), neither party asked the court to construe "proximate the neck" of a user, and thus the court gave no rationale for construing "proximate the neck" as "near" the neck. The court mentioned it was relying on its prior claim construction decision from *Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*, Case No. 09-CV-0102 (Doc. No. 139). No "proximate" analysis was given in that decision either for the phrase; that decision also reveals that the parties likewise did not seek construction of the phrase, "form a pocket proximate the lips," yet the court construed "proximate" to mean a pocket "by" the lips. *See id.* at 9. Thus, the *Seirus* decisions themselves fail to assign "proximate" a consistent meaning.

In *Kinzenbaw v. Case, LLC*, 318 F. Supp. 2d 778 (N.D. Iowa 2004), the disputed claim phrase was, "proximate the mid-point of said lift frame in its direction of elongation…." *Id.* at 810. The defendant argued that "proximate the midpoint" meant "at the midpoint," with the only allowable variation being "reasonable manufacturing tolerances." *Id.* After reviewing the intrinsic record, the court found no intent that "proximate" meant just manufacturing tolerances, and thus construed "proximate" to mean "very near" or "close." *Id.* at 810-11. Lupin does not argue here the type of manufacturing-tolerance claim construction that *Kinzenbaw* rejected.

Finally, in *180s, Inc. v. Gordini U.S.A., Inc.*, 699 F. Supp. 2d 714 (D. Md. 2010), the court construed the meaning of a connector "disposed proximate to" the opening of the

2160931, at *37, *40 (D. Or. May 31, 2011) (holding proximate "in the claims refers to the location of the image pick-up apparatus or viewing hole relative to the object to be observed," and based on "the claim language, specification, and prosecution history … the proper construction of the term is 'near or by'"; but applying indefiniteness standards to "proximate" that the Supreme Court later rejected in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909-10 (2014)).

23

receptacle as a connector "located closely in space" to the opening, and not inside a receptacle. But the court did not just invoke a dictionary definition and end the analysis; the court closely considered how the term operated in the context of the claims. *180s, Inc.*, 699 F. Supp. 2d at 725. In adopting the ultimate construction, the court confirmed that "this construction makes sense in light of the specification and fits both uses of 'disposed proximate' in claim 1." *Id.*

This is precisely what Lupin does here: use the guidance in the specification and the claims to try to faithfully describe the meaning of the gripping aid placement relative to the other mouthpiece edge and actuator elements that independent claims 1 and 13 require, so that it makes sense and aligns to what the alleged invention is.

By contrast, as Lupin's opening brief explained, Plaintiffs' vague "close to" language seems designed to let Plaintiffs later put the gripping aid in locations that are utterly divorced from the mouthpiece edge and actuator positioning, and in a manner entirely inconsistent with what Plaintiffs themselves admit the purported invention to be:



(Defs.' Opening Br. at 9).

Thus, none of Plaintiffs' cited cases suggest that the term "proximate" should be given a broad meaning of vaguely somewhere close, as Plaintiffs do; rather, the cases reveal that "proximate" must convey a type of locational specificity.

Lupin's proposed construction of "proximate" appropriately articulates that the gripping aid is disposed "next to or immediately before/after" the mouthpiece edge, and "next to or immediately before/after" the actuating member. This gives a clear, objective placement for the gripping aid, and likewise respects the claim's insistence that the gripping aid be both proximate to an edge *and* proximate to the actuator when the mouthpiece is closed.

### 3. Even if the Court seeks to apply Plaintiffs' vague construction, it still should make clear that "close to" does not encompass locations on the mouthpiece's surface.

As Lupin's opening brief explained, Plaintiffs' claims, specification and prosecution history make clear that the gripping aid is supposed to be along the edge of the mouthpiece, and more specifically oriented so that the gripping aid is positioned between the mouthpiece edge and the actuator. (Defs.' Opening Br. at 8-18).

Plaintiffs made no effort in their opening brief to provide any detail about what their claims and specification state the gripping aid is; how it allegedly differs from prior art gripping aids; or the extensive prosecution history that led to the positional requirements assigned to the gripping aid in the issued claims.

As Lupin's opening brief noted, the Examiner rejected Plaintiffs' claims that lacked the positional requirements given the prior art Zierenberg Figure 1; and noted that this prior art inhaler had a gripping aid on the mouthpiece's surface.  (Defs.' Opening Br. at 14-15; Ex. 2, '676 patent PH, 10/30/2007 Office Action at 8-9 (LUPIN(TIO)0264955-56) ("mouthpiece has a gripping aid (the mouthpiece tapers with curved surface, this surface is gripping aid … the user's finger can easily get caught onto the curved surface to apply a force that opened the lid).")).

25

**Prior art mouthpiece**         **'676 patent mouthpiece**

 

(Ex. 2, '676 patent PH, 10/30/2007 Office Action at 8-9 (LUPIN(TIO)0264955-56); *see also* Ex. 6, WO 03/084502 at Fig. 1).  Similarly, following the Examiner's reasoning, the HandiHaler I's tapered mouthpiece surface may have a gripping aid, but it is on the surface; whereas the HandiHaler II's gripping aid (yellow) is placed in a very narrow place underneath the mouthpiece edge, and will rest by the actuator (green) when the mouthpiece is closed:

**HandiHaler I**            **HandiHaler II**

 

Plaintiffs argued during prosecution that positioning their gripping aid "proximate to an edge" of the mouthpiece and actuator differentiated the claims from the prior art.  (Ex. 2, '676 patent PH, 2/25/2008 Amendment at 9 (LUPIN(TIO)0265002)).  Lupin's construction is faithful to this location placement.  But Plaintiffs' vague "close to" the edge construction appears designed to permit gripping aids upon the mouthpiece surface—despite that being known in the prior art.

26

Because only Lupin's construction properly places the gripping aid in contact with the mouthpiece edge (next to or before/after it), Lupin's construction should be adopted.

## V.    CONCLUSION.

For the foregoing reasons, Lupin respectfully requests that this Court adopt its proposed constructions for the disputed claim terms and reject Plaintiffs' constructions.


Dated:  December 16, 2019                    Respectfully submitted,

                                             By:  */s/ Arnold B. Calmann*

                                             Arnold B. Calmann (abc@saiber.com)
                                             Jeffrey Soos (js@saiber.com)
                                             Katherine A. Escanlar (kae@saiber.com)
                                             **Saiber LLC**
                                             One Gateway Center
                                             10th Floor, Suite 1000
                                             Newark, New Jersey 07102
                                             (973) 622-3333

                                             William A. Rakoczy (wrakoczy@rmmslegal.com)
                                             Paul J. Molino (pmolino@rmmslegal.com)
                                             Deanne M. Mazzochi (dmazzochi@rmmslegal.com)
                                             Tara M. Raghavan (traghavan@rmmslegal.com)
                                             Matthew V. Anderson (manderson@rmmslegal.com)
                                             Katie A. Boda (kboda@rmmslegal.com)
                                             **Rakoczy Molino Mazzochi Siwik LLP**
                                             6 West Hubbard Street, Suite 500
                                             Chicago, Illinois 60654
                                             (312) 222-6301

                                             *Attorneys for Defendants Lupin Atlantis Holdings SA and Lupin Limited*